ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL XI

| | | |
|---|---|---|
| LEONCIO LEBRÓN QUEVEDO<br><br>Recurrente<br><br>v.<br><br>DEPARTAMENTO DE CORRECCIÓN Y REHABILITACIÓN<br><br>Recurrido | KLRA202400470 | *Revisión Judicial* procedente de la División de Remedios Administrativos del Departamento de Corrección y Rehabilitación<br><br>Caso Núm. ICSH-33-24<br>Codificada: W-23<br><br><br>Sobre:<br>Propiedad Retenida |

Panel integrado por su presidenta, la Jueza Brignoni Mártir, la Jueza Álvarez Esnard y la Jueza Prats Palerm.

*Prats Palerm, Jueza Ponente*

## SENTENCIA

En San Juan, Puerto Rico, a 23 de octubre de 2024.

Comparece por derecho propio el señor Leoncio Lebrón Quevedo (en adelante, "señor Lebrón Quevedo" o "recurrente"), miembro de la población correccional en Sabana Hoyos de Arecibo, mediante un recurso de *Revisión Judicial.* Nos solicita la revocación de la *Respuesta de Reconsideración al Miembro de la Población Correccional,* emitida el 16 de junio de 2024 y notificada el 2 de agosto de 2024, por el Departamento de Corrección y Rehabilitación (en adelante, "DCR"). En virtud del referido dictamen, la agencia resolvió que entregó el 30 de mayo de 2024 las pertenencias solicitadas por el recurrente.

Por los fundamentos que expondremos a continuación, *confirmamos* el dictamen recurrido.

## I.

El 21 de marzo de 2023, el señor Lebrón Quevedo presentó una *Solicitud de Remedios Administrativos* (ICHS-33-24).[1] En síntesis, alegó que el DCR no le entregó sus pertenencias luego de efectuarse su traslado de

---

[1] Apéndice de la agencia recurrida, pág. 1.

centro correccional. Particularmente solicitó la entrega de productos de **higiene personal, ropa interior, y llaves de su ropería**. (Énfasis suplido).

Tras examinar la referida solicitud, el 24 de abril de 2024, el Evaluador de la División de Remedios Administrativos del DCR dictó una *Respuesta al Miembro de la Población Correccional,* notificada el 1 de mayo de 2024, acompañada de un *Recibo de Pertenencias.*[2] En esta etapa, la agencia emitió el siguiente pronunciamiento administrativo:

> Referente al remedio que usted radicó le informé que este servidor realizó las gestiones pertinentes con el Capitán Castro quien labora en la Institución Ponce 1000 para que este realizara las gestiones con la Unidad de Rutas y Escoltas de traer a la Institución 216 las pertenencias. Se le envi[ó] v[í]a correo electrónico el recibo de las mismas.[3]

En desacuerdo, el 5 de mayo de 2024, el señor Lebrón Quevedo sometió una *Solicitud de Reconsideración* ante la agencia.[4] En esencia, reiteró que no había recibido todavía sus pertenencias. Luego de considerar tales argumentos, el 16 de mayo de 2024, la agencia notificó que acogía la reconsideración solicitada.[5]

Pendiente el proceso de reconsideración, el 30 de mayo de 2023, el señor Lebrón Quevedo sometió una segunda *Solicitud de Remedios Administrativos* (ICSH-43-24) recibida el 21 de junio de 2024 de acuerdo con lo suscrito por el Evaluador de la División de Remedios Administrativos.[6] En esta ocasión, informó que ese día recibió sus pertenencias. Sin embargo, puntualizó que faltaban otros artículos por entregar, tales como **un cajón, un abanico, un saco, unos relojes y una serie de documentos personales**. (Énfasis suplido).

En atención a la primera *Solicitud de Remedios Administrativos* (ICHS-33-24), el 16 de julio de 2024, el DCR emitió la *Respuesta de Reconsideración al Miembro de la Población Correccional,* notificada el 2 de

---

[2] Apéndice de la agencia recurrida, págs. 3-5.
[3] Apéndice de la agencia recurrida, pág. 4.
[4] Apéndice de la agencia recurrida, pág. 6.
[5] Apéndice de la agencia recurrida, pág. 7.
[6] Apéndice de la agencia recurrida, págs. 15-16.

agosto de 2024.[7] En lo pertinente, formuló las siguientes determinaciones de hechos:

> 1. El recurrente present[ó] Solicitud de Remedios Administrativos el 20 de marzo de 2024 ante el Evaluador de Remedios Administrativos, Ovidio González Latorre. En su escrito, expone que el 18 de enero de 2024 fue trasladado a la Institución Correccional Ponce Principal pero sus pertenencias fueron retenidas en espera ubicación. Posteriormente el 11 de marzo de 2024 lo trasladan al Centro de Detención del Oeste. El 16 de marzo de 2024 fue trasladado a la Institución Correccional Sabana Hoyos 216. Por lo cual solicita que se le envíen las pertenencias.
>
> 2. El 27 de marzo de 2024 se hizo una [n]otificación dirigida al Teniente Ricardo Rivera Cantre, Comandante de la Guardia, Institución Correccional Sabana [H]oyos 216.
>
> 3. El 24 de abril de 2024 se recibió respuesta del Teniente Ricardo Rivera Cantre, Comandante de la Guardia, Institución Correccional Sabana [H]oyos 216 quien contestó que realizó las gestiones pertinentes con el Capitán Castro quien labora en la Institución de Ponce 1000 para que este realizara las gestiones con la Unidad de Ruta y Escolta de traer a la Institución 216 las pertenencias.
>
> 4. El 1 de mayo de 2024 se hace la entrega al recurrente del Recibo de Respuesta.
>
> 5. El 16 de mayo de 2024, el recurrente inconforme con la Respuesta emitida presentó Solicitud de Reconsideración ante el Coordinador Regional Remedios Administrativos. En síntesis, arguye que no está de acuerdo con contestación.

Así dispuesto, resolvió que tras corroborar los datos suministrados por el recurrente sus pertenencias le fueron entregadas el 30 de mayo de 2024. A su vez, adjuntó al dictamen una serie de fotografías con el propósito de evidenciar la referida entrega.[8]

Inconforme, el 23 de agosto de 2024, el señor Lebrón Quevedo recurrió ante este Tribunal de Apelaciones mediante una solicitud de *Revisión Judicial*. En su recurso, presentó los siguientes señalamientos de error:

> **Primer Error:** Como norma general es indispensable en el Departamento de Corrección y Rehabilitación que un miembro de la población correccional sea [t]rasladado de una [i]nstitución a otra dentro del sistema penal de Puerto Rico si no es acompañado tanto de sus expedientes como de sus pertenencias. (La única excepci[ó]n a la norma es traslado de [e]mergencia o por razón de seguridad). La cual no es el caso que nos ocupa.

---

[7] Apéndice de la agencia recurrida, págs. 9-13.
[8] Apéndice de la agencia recurrida, pág. 10.

**Segundo Error:** La contestación por parte de la División de Remedios Administrativos no fue una [r]azonable, la gran demora en dicho proceso ha causado daños [i]rreparables, que desde el 11 de marzo de 2024 el peticionario ha estado careciendo de sus productos de higiene personal, así como documentos personales, las cuales [aún] no han [r]esuelto dicha problemática.

**Tercer Error**: El día 30 de mayo de 2024 entregar[o]n una parte de las pertenencias, lo cual el D.C.R. tenía conocimiento que faltaba propiedad del peticionario ya que en el Recibo de la propiedad dado el día 18 de enero de 2024 (véase anejo-10) [está] la lista completa de los artículos referidos y la contestación no fue a base de la preponderancia de la prueba.

**Cuarto Error:** La [i]gual protección de las leyes es un derecho constitucional, [el] cual el Departamento de Corrección y Rehabilitación está obligad[o] [i]mplementar de forma efectiva a los ciudadanos que han sido convictos de delitos.

Sometido el recurso de epígrafe, el 4 de septiembre de 2024, emitimos una *Resolución* en la cual concedimos treinta (30) días al Procurador General para presentar su alegato. Consecuentemente, el 7 de octubre de 2024, el DCR compareció por conducto de la Oficina del Procurador General de Puerto Rico mediante un *Escrito en Cumplimiento de Resolución y Solicitud de Desestimación.*

En respuesta a las alegaciones, la agencia recurrida adujo que las pertenencias reclamadas le fueron entregadas al señor Lebrón Quevedo. No obstante, advirtió que el recurrente presentó una segunda *Solicitud de Remedios Administrativos* ante la agencia (ICSH-43-24), en la cual reclamó otras pertenencias previamente no especificadas. Puntualizó que la cuestión planteada tanto en esta última petición administrativa como en el recurso de epígrafe se encuentra bajo un proceso investigativo ante el organismo agencial. Por consiguiente, razonó que la revisión judicial correspondiente a esta solicitud debe atenderse en un recurso independiente. En vista de ello, solicitó que confirmemos la determinación recurrida, y en su alternativa, peticionó la desestimación. Con el beneficio de la comparecencia de las partes, procedemos a discutir el derecho pertinente a la controversia ante nos.

**II.**

**A. *Revisión judicial de las determinaciones administrativas***

En nuestro ordenamiento jurídico, una parte inconforme con una determinación u orden administrativa final tiene el derecho a recurrir en revisión judicial ante el Tribunal de Apelaciones de Puerto Rico. Véase Artículo 4.006(c) de la Ley de la Judicatura del Estado Libre Asociado de Puerto Rico, Ley 201-2003, 4 LPRA sec. 24y, según enmendada; Sección 4.2 de la Ley de Procedimiento Administrativo Uniforme, Ley Núm. 38-2017, 3 LPRA sec. 9672, según enmendada. Así pues, el derecho a cuestionar la determinación administrativa es parte del debido proceso de ley protegido por la Constitución de Puerto Rico. *Autoridad de Carreteras y Transportación v. Programa*, 210 DPR 897, 908 (2022); *Assoc. Condomines v. Meadows Dev.*, 190 DPR 843, 847 (2014).

Como norma general, en el trámite revisorio, los foros apelativos estamos llamados a conceder amplia deferencia a las decisiones agenciales. *Otero Rivera v. Bella Retail Group, Inc.*, 2024 TSPR 70, 213 DPR ___ (2024); *Oficina del Comisionado de Seguros de Puerto Rico v. Point Guard Insurance Company, Inc.*, 205 DPR 1005, 1026 (2020). Por lo que, solo es posible sustituir "el criterio de la agencia por el del tribunal revisor cuando no exista una base racional para explicar la decisión administrativa". *Capote Rivera v. Voili Voila Corporation,* 2024 TSPR 29, 213 DPR ___ (2024)*; Capó Cruz v. Jta. de Planificación et al, supra,* 204 DPR 581, 591 (2020).

Ahora bien, no podemos imprimir un sello de corrección a las determinaciones o las interpretaciones administrativas irrazonables, ilegales o contrarias a derecho. *Super Asphalt Pavement, Corp. v. Autoridad para el Financiamiento de la Infraestructura de Puerto Rico*, 206 DPR 803, 819 (2021). Por tanto, nuestra deferencia cede cuando: (1) la decisión no está basada en evidencia sustancial; (2) el organismo administrativo ha errado en la aplicación o interpretación de las leyes o reglamentos; (3) ha mediado una actuación arbitraria, irrazonable o ilegal, o (4) la actuación administrativa lesiona derechos constitucionales fundamentales. *Capote*

*Rivera v. Voili Voila Corporation, supra; Super Asphalt Pavement, Corp. v. AFI y otro, supra*, pág. 819.

No obstante, nos corresponde puntualizar que, los tribunales revisores no intervendremos en las determinaciones de hechos siempre y cuando surja del expediente administrativo evidencia sustancial que las respalde. *The Sembler Co. v. Mun. De Carolina,* 185 DPR 800, 821-822 (2012). La evidencia sustancial es aquella prueba relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión. *Capó Cruz v. Jta. de Planificación et al., supra*, pág. 591; *Rebollo v. Yiyi Motors,* 161 DPR 69, 77 (2004). En cambio, a tenor con la Sección 4.5 de la LPAU, *supra*, tenemos autoridad para revisar las conclusiones de derecho en todos sus aspectos. 3 LPRA sec. 9675. Es decir, ostentamos la facultad para revisarlas completa y absolutamente. *IFCO Recycling v. Aut. Desp. Sólidos,* 184 DPR 712, 745 (2012); *Assoc. Ins. Agencies, Inc. v. Com. Seg. P.R.,* 144 DPR 425, 436 (1997). Sin embargo, esto no implica "la sustitución automática del criterio e interpretación del organismo administrativo". *Capó Cruz v. Junta de Planificación, supra,* pág. 591; *Rolón Martínez v. Caldero López*, 201 DPR 26, 36 (2018).

En consonancia con lo anterior, es menester destacar que los dictámenes de las autoridades correccionales merecen gran deferencia. *Cruz Negrón v. Administración de Corrección,* 164 DPR 341, 357 (2005). Al respecto, el Tribunal Supremo de Puerto Rico establece lo siguiente:

> Por lo general, la composición de estos comités la conforman peritos en el campo tales como técnicos sociopenales y oficiales o consejeros correccionales. Estos profesionales cuentan con la capacidad, la preparación, el conocimiento y la experiencia necesarios para atender las necesidades de los confinados y realizar este tipo de evaluaciones. Por esta razón, una determinación formulada por el referido Comité debe ser sostenida por el foro judicial siempre que no sea arbitraria o caprichosa y esté fundamentada en evidencia sustancial. Es decir, siempre que la decisión sea razonable, cumpla con el procedimiento establecido en las reglas y los manuales, y no altere los términos de la sentencia impuesta, el tribunal deberá confirmarla. *Íd.*, págs. 354-355.

A la luz de su conocimiento especializado, la determinación agencial merece deferencia sustancial aun cuando no sea la única razonable. *Torres Santiago*

*v. Depto. Justicia*, 181 DPR 969, 1003 (2011). Esta normativa contempla que las instituciones correccionales "están en mejor posición para resolver las controversias surgidas en torno a los asuntos que le fueron encomendados por ley". *Cruz Negrón v. Administración de Corrección, supra*, págs. 355-356.

### B. Proceso adjudicativo ante el Departamento de Corrección y Rehabilitación

La Constitución de Puerto Rico decreta como política pública del Estado reglamentar las instituciones penales para que sirvan a sus propósitos en forma efectiva, y así propender al tratamiento adecuado de la población correccional a los fines de posibilitar su rehabilitación moral y social. Const. PR, Art. VI, Sección 19, LPRA Tomo I. En virtud de este mandato, el Artículo 2 del Plan de Reorganización del Departamento de Corrección y Rehabilitación, Ley Núm. 2-2011, según enmendado, 3 LPRA, Ap. XVIII, Art. 2, ("Plan de Reorganización") ordena "la creación de un sistema integrado de seguridad y administración correccional en donde las funciones y los deberes se armonicen en un proceso facilitador a la imposición de penas y medidas de seguridad". En lo pertinente, el Artículo 7(aa) del Plan de Reorganización, *supra*, le concede al Secretario del DCR las siguientes facultades:

> [A]doptar, establecer, desarrollar, enmendar, derogar e implementar reglas, reglamentos, órdenes, manuales, normas y procedimientos para el funcionamiento efectivo del Departamento y de los organismos bajo su jurisdicción, a los fines de regir la seguridad, la disciplina interna y la conducta de funcionarios, empleados y de la clientela, así como los programas y servicios. 3 LPRA, Ap. XVIII, Art. 7(aa).

En cumplimiento de lo anterior, el 14 de mayo de 2015, el DCR adoptó el Reglamento para Atender las Solicitudes de Remedios Administrativos Radicadas por los Miembros de la Población Correccional, Reglamento Núm. 8583 (Reglamento Núm. 8583). En lo pertinente, la Regla XII (2), Reglamento Núm. 8583, *supra*, dispone que un miembro de la población correccional tendrá quince (15) días calendario para someter tal solicitud, contados a partir de que advenga en conocimiento de los hechos que motivan su solicitud, salvo que medie justa causa o caso fortuito que impidan su presentación.

Un evaluador estará a cargo de recopilar, recibir, evaluar y contestar la solicitud de remedio administrativo conforme a la respuesta emitida por el superintendente de la institución correccional. Regla IV (11), Reglamento Núm. 8583, *supra.* La respuesta administrativa en esta etapa consiste en un "[e]scrito emitido por el Evaluador, en el cual se contesta la solicitud del remedio administrativo radicada por el miembro de la población correccional". Regla IV (20), Reglamento Núm. 8583, *supra.*

De resultar inconforme con la determinación, le corresponde al miembro correccional presentar una *Solicitud de Reconsideración* ante el Coordinador dentro del término de veinte (20) días contados a partir del recibo de la notificación. Regla XIV (1), Reglamento Núm. 8583, *supra.* De acogerse tal solicitud, el Coordinador emitirá una *Resolución de Reconsideración,* que constituye un (1) breve resumen de los hechos que motivaron la solicitud, (2) el derecho aplicable y (3) la disposición o solución a la controversia planteada. Regla IV (21), Reglamento Núm. 8583, *supra.*

### C. *Reglamento Interno de Normas y Limitaciones sobre Propiedad Personal de Confinados* [9]

El Artículo II del Reglamento Interno de Normas y Limitaciones sobre Propiedad de Confinados (Reglamento Interno) establece como política del Departamento de Corrección y Rehabilitación que los confinados tengan bajo su posesión aquella propiedad autorizada a retener al momento de su ingreso. En específico, la población correccional tiene derecho a retener aquella propiedad autorizada mediante los siguientes procedimientos:

1. Que le sea autorizada a retener a su ingreso a la institución correccional.

2. Que sea provista por la institución durante la estadía en prisión.

3. Que haya sido adquirida mediante compra en la Comisaría en la institución.

4. Que haya sido autorizada a recibirse por correo, de conformidad con lo dispuesto en los reglamentos y las normas institucionales.

---

[9] La Administración de Corrección (actualmente, Departamento de Corrección y Rehabilitación de Puerto Rico) aprobó dicho reglamento el 30 de diciembre de 2004. Este cuerpo legal ha sufrido una serie de enmiendas. Sin embargo, las disposiciones citadas en esta *Sentencia* permanecen inalteradas a tenor con el Artículo 87 del Plan de Reorganización, *supra,* 3 L.P.R.A., Ap. XVIII, Art. 87.

5. Que haya sido autorizada por los funcionarios de la institución, de conformidad con lo aquí expuesto. Artículo VI, Reglamento Interno, *supra.*

En lo pertinente a los traslados de institución correccional, el Artículo XI (1) y (2) del Reglamento Interno, *supra,* preceptúa dos (2) directrices respecto a las pertenencias:

1. La Administración será responsable junto con el confinado su expediente.

2. Al confinado se le permitirá llevar los siguientes artículos: pasta, jabón, cepillo dental, ropa interior, calzado, camisa, pantalón. Ningún otro artículo suministrado por la institución podrá ser parte del equipaje que se traslada con el confinado.

A su vez, a los fines garantizar esta normativa, el Artículo VI(C) del precitado cuerpo reglamentario viabiliza el trámite intitulado *Inventario y Recibo de Propiedad*:

A su llegada a la institución, y como parte del procedimiento de ingreso, toda propiedad del confinado será retenida. Se hará un inventario de toda la propiedad y los valores retenidos y se entregarán los recibos correspondientes al confinado. Para la retención, manejo y disposición de la propiedad del confinado, se seguirán los procedimientos establecidos en esa institución.

Como parte del proceso de admisión, se entregará aquella propiedad personal provista por la institución, a saber: (1) uniforme institucional (uniforme, pantalón corto, zapatos y ropa interior), y (2) artículos de aseo personal (pasta de dientes, jabón, cepillo de dientes, rasuradora desechables, ropa de cama, toallas, *mattress* y almohadas). Artículo VII (1), Reglamento Interno, *supra.* La información sobre el control de estas pertenencias se consignará en unos formularios correspondientes al área de ropería, en los cuales se detallarán la propiedad entregada al confinado, la descripción de esta, la fecha de entrega, y la firma del confinado y del empleado que hace la entrega. Artículo VII (2), Reglamento Interno, *supra.*

**III.**

Examinado sosegadamente el recurso ante nuestra consideración, disponemos que el DCR emitió una determinación de conformidad con el marco legal administrativo reseñado y a la luz de la evidencia sustancial

obrante en el expediente administrativo. Por estar estrechamente relacionados los señalamientos error, pasamos a resolverlos de manera conjunta.

En el caso que nos ocupa, el DCR por conducto del Procurador General cuestiona la jurisdicción de este Tribunal para atender el presente recurso. Por la trascendencia de este argumento, nos corresponde abordarlo en primer lugar. Al revisar detenidamente el expediente contemplamos que estamos ante un dictamen administrativo final susceptible a la revisión judicial. La resolución cuestionada contiene determinaciones de hechos y conclusiones de derecho según lo dispuesto en la Regla IV (2) del Reglamento Núm. 8583, *supra.* Por tanto, ostentamos jurisdicción para ejercer nuestras facultades revisoras. Así puntualizado, nos encontramos en posición de resolver la controversia en sus méritos.

En nuestro ordenamiento jurídico, los procesos internos de las agencias resultan adecuados, siempre y cuando no se incumpla con las reglas y los manuales adoptados por los entes administrativos. Véase *Cruz v. Administración de Corrección, supra,* 357. De conformidad con los hechos expuestos y el derecho aplicado, la *Resolución* recurrida merece nuestra deferencia. Esta refleja un manejo razonable de los asuntos internos a tenor con el trámite de *Inventario y Recibo de Propiedad* recogido en el Artículo VI(d) y las directrices relativas al traslado según prescritas en el Artículo XI (1) y (2) del *Reglamento Interno, supra.* Además, no vemos una actuación arbitraria, irrazonable o ilegal ni una lesión en derechos constitucionales por parte de la agencia que nos motiven a resolver a favor del recurrente. Veamos.

Surge del expediente de epígrafe que, el señor Lebrón Quevedo recibió las pertenencias reclamadas en su primera solicitud administrativa. El 30 de mayo de 2024, este confirmó dicha información al presentar una segunda *Solicitud de Remedios Administrativos* (ICSH-43-24), en la cual indicó que la entrega se efectuó ese día. A su vez, en este escrito peticionó otros artículos

no reclamados ni especificados con anterioridad.[10] En esa misma dirección, notamos que obra en el expediente una serie de fotos que acreditan la aludida entrega.[11] Igualmente identificamos un *Recibo de Pertenencia* suscrito por el recurrente, sin objeción alguna al respecto,[12] cuyo contenido desglosa información sobre las pertenencias que la institución correccional le enviaría como parte de su traslado. En vista de ello, nos corresponde *confirmar* la decisión impugnada concerniente a la primera solicitud administrativa. El recurrente no alcanzó a rebatir la presunción de legalidad que reviste al dictamen cuestionado.

Por último, el señor Lebrón Quevedo alega que ha sufrido daños y angustias mentales por no efectuarse a tiempo la entrega de sus pertenencias. Argumenta que tal actuación administrativa constituye una violación a su derecho a la igual protección a las leyes. Por lo anterior, solicita la imposición de una sanción económica a la agencia. Tras evaluar la normativa concerniente al derecho administrativo, determinamos que tales reclamos deben ser atendidos en un pleito independiente. Asimismo, nos abstenemos de atender las alegaciones vinculadas con la segunda *Solicitud de Remedios Administrativos* (ICSH-43-24), toda vez que ese asunto se encuentra bajo investigación ante la agencia. Por tanto, al no haber una determinación final de la agencia sobre este asunto, carecemos de jurisdicción para atender el mismo.

En virtud de la realidad fáctica evaluada a la luz del derecho administrativo, reiteramos que nos corresponde confirmar la determinación agencial recurrida.

**IV.**

Por los fundamentos que anteceden, *confirmamos* la determinación administrativa recurrida.

---

[10] Apéndice de la agencia recurrida, pág. 15.
[11] Apéndice de la agencia recurrida, págs. 11-13.
[12] Apéndice de la agencia recurrida, pág. 5.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones